UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------X

TECHNOLOGY IN PARTNERSHIP, INC.,

Plaintiff,

– against –                                                        10 Civ. 8076 (RPP)

**OPINION AND ORDER**

RUDIN, et al.,

Defendants.

------------------------------------------------------------------X

**ROBERT P. PATTERSON, JR., U.S.D.J.**

      Plaintiff Technology in Partnership ("TIP" or "Plaintiff") filed a complaint on October

22, 2010, alleging that defendants created an enterprise with a common goal to divert and steal

funds from TIP.  See (Compl. ¶ 1.)  Specifically, Plaintiff alleges a fraudulent scheme taking

place over the nearly thirteen year period between October 1997 and May 2010 in violation of

the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1962 ("RICO") and other

state law claims.

      On January 26, 2011, defendants Alan Zverin ("Zverin"), Zverin & Fischer, LLP

("Z&F"), and Eisman, Zucker, Klein & Ruttenberg, LLP ("EZKR") (collectively, "Accountant

Defendants") moved pursuant to Fed. R. Civ. P. 12(b)(6) to dismiss all claims against them.

Defendants Edward Rudin ("Rudin"), Alyse Rudin, Gloria Rudin, Alyfunkids, Inc. d/b/a/ My

Gym Children's Fitness Center ("Alyfunkids"), My Gym Westfield, Inc. d/b/a My Gym

Children's Fitness Center ("My Gym Westfield"), My Gym Glen Rock, Inc. ("My Gym Glen

Rock"), and Rudin Appraisals, LLP ("Rudin Appraisals") (collectively, "Rudin Defendants")

moved separately to dismiss Plaintiff's Complaint in its entirety on statute of limitations

grounds, or in the alternative, to hold a hearing with limited discovery pursuant to Fed. R. Civ. P.

12(i).

　　　　For the reasons stated below, Accountant Defendants' motion to dismiss is granted and

Rudin Defendants' motion to dismiss and motion for preliminary hearing are denied.

## I.　　BACKGROUND

　　　　Plaintiff is a closely-held corporation formed to provide computer consulting services,

including installation and support to businesses.  (Compl. ¶ 28.)  On October 3, 1997, Robert

Baker ("Baker") and Rudin incorporated TIP in New Jersey, and during the period of the claims,

its principal place of business was in New York.  (Id. ¶¶ 34, 14-15.)  Baker and Rudin were the

sole shareholders and officers of TIP: Baker became President of TIP and received 60% of TIP's

stock, and Rudin became Vice-President or Secretary of TIP and received 40% of TIP's stock.

(Id. ¶¶ 30-32.)  Rudin has an accounting background, and was responsible for TIP's day-to-day

operations and TIP's financial filings.  (Id. ¶¶ 32, 35.)  Plaintiff's counsel acknowledged at oral

argument that between October 1997 and May 2010, Baker received and reviewed Schedule K-1

statements annually, but did not otherwise perform his duties as a director and officer of TIP

until May 2010, when he approached Rudin and asked for further documentation – which he was

denied – after which Baker locked Rudin out of the company and gained access to financial

documents and records that were on the company's file server.  (Tr. at 26-27.)  Based on these

financial documents and records, Baker, who brings this action on behalf of TIP, "first discerned

the existence of the Enterprise and its scheme to divert and steal funds from TIP . . . ."  (Compl. ¶ 43.)  The Complaint cites to no other sources for the allegations made therein.

Accountant Defendants were appointed by Rudin as accountants for TIP.  Rudin first engaged Z&F as TIP's accountants.  (Id. ¶ 36.)  At Z&F, Robert Fischer, Rudin's brother-in-law, "took direction from Rudin concerning TIP's accounting and tax filings" until his death.  (Id. ¶¶ 37-38.)  Afterwards, Zverin and his new firm EZKR were responsible for TIP's accounting and tax filings.  (Id. ¶ 38.)  Plaintiff contends that Baker never received TIP's corporate tax returns or other financial documents, other than the yearly Schedule K-1 statements, which only contained TIP's reported profit or loss.  (Id. ¶¶ 39, 44, 81.)  Plaintiff also alleges Rudin and Accountant Defendants engaged in a pattern and practice of conduct of filing false information with the Internal Revenue Service (IRS), and paid Rudin excessive compensation.  (Id. ¶ 38.)  Specifically, Plaintiff contends that from 1999 to 2009 Accountant Defendants prepared TIP's federal and state tax returns, which "contained fraudulent  and false information," "at the direction of defendant Edward Rudin, and without independent verification of the underlying data."  (Id. ¶¶ 57-58.)  The Complaint suggests that Accountant Defendants "paid Mr. Rudin excessive compensation in an effort to funnel money out of TIP."  (Id. ¶38.)  There is no supporting allegation demonstrating Accountant Defendants were employed by TIP with the authority to cause payments to be made by TIP.  Similarly, the Complaint alleges that the fraudulent efforts of the Rudin Defendants and Accountant Defendants "were successful in preventing Mr. Baker from learning of the Enterprise from TIP's incorporation in October 1997 through in or about May 2010," but does not allege what actions each group of defendants took

3

in this regard.  (Id. ¶ 42.)  Plaintiff also alleges "a professional relationship" between the Rudin

Defendants and Accountant Defendants.  (Id. ¶ 60.)

Plaintiff alleges the Rudin Defendants engaged in various conduct to carry out the

fraudulent scheme.  (Id. ¶ 3.)  Plaintiff alleges Rudin received excessive and unwarranted salary

and bonus payments between 2001 and 2009, and diverted TIP funds through a series of cash

withdrawals from the Operating Account and cash deposits into the Payroll Account between

July 2007 and November 2008.  (Id. ¶ 41.)  Plaintiff contends that the cash deposits were

actually TIP's client payments; checks originally made payable to TIP were cashed against a TIP

account, which Rudin later used to make a deposit into the Payroll Account.  (Id. ¶¶ 66-70.)

Plaintiff also alleges Rudin diverted and stole TIP funds by sending checks to defendants Alyse

Rudin and Gloria Rudin, Rudin's wife and mother, respectively.  (Id. ¶¶ 71-76.)  Defendants

Alyfunkids, My Gym Westfield, and My Gym Glen Rock (collectively, "My Gym Defendants")

and Rudin Appraisals are owned and operated by Rudin.  (Id. ¶ 2.)  Plaintiff alleges Rudin used

TIP's offices, equipment, systems and personnel to run My Gym Defendants and Rudin

Appraisals, (id. ¶¶ 88-89,) and diverted and stole TIP funds to fund and operate My Gym

Defendants and Rudin Appraisals, (id. ¶ 82.  Other than Gloria Rudin, who lives in Del Ray

Beach, Florida, all of the Rudin Defendants either live in or have their principal place of business

at 19 Princess Drive, North Brunswick, New Jersey.  (Id. ¶¶ 19-27.)

On October 22, 2010, Plaintiff filed a Complaint claiming: (1) civil RICO violation

against all defendants; (2) civil RICO conspiracy against all defendants; (3) breach of fiduciary

duty against Rudin; (4) malpractice against Accountant Defendants; (5) breach of fiduciary duty

against Accountant Defendants; (6) aiding and abetting breach of fiduciary duty against Alyse Rudin, Gloria Rudin, My Gym Defendants, and Rudin Appraisals; (7) fraud against Rudin; (8) fraudulent concealment against Rudin and Accountant Defendants; (9) constructive trust against Rudin Defendants; (10) conversion against Rudin Defendants; (11) unjust enrichment against Rudin Defendants; and (12) accounting against Rudin, Accountant Defendants, My Gym Defendants, and Rudin Appraisals.  Accountant Defendants and Rudin Defendants filed separate Rule 12(b)(6) motions to dismiss on January 26, 2011.  Rudin Defendants also filed a motion for a preliminary hearing on January 26, 2011.  Plaintiff filed a memorandum in opposition to the motions on March 28, 2011.  ("Pl.'s Opp. Mem.")   On April 29, 2011, Accountant Defendants and Rudin Defendants filed reply memorandum in support of their motions to dismiss.  Oral argument was held on September 20, 2011.

## II.    DISCUSSION

A.    Legal Standard

On a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6), the court must accept "all well-pleaded allegations in the complaint as true, drawing all reasonable inferences in the plaintiff's favor."  Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC, 595 F.3d 86, 91 (2d Cir. 2010).  To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)).  Applying this plausibility standard, a complaint must do more than offer "'naked assertions devoid of further factual enhancement,' and a court is not 'bound to accept as

5

true a legal conclusion couched as a factual allegation.'" Iqbal, 129 S. Ct. at 1949-50 (quoting Twombly, 550 U.S. at 555, 557). See Vargas v. Choice Health Leasing, No. 09 Civ. 8264 (DLC), 2011 U.S. Dist. LEXIS 49310, at *5-6 (S.D.N.Y. May 9, 2011) (applying Iqbal and Twombly plausibility standard to civil RICO claim).

A motion to dismiss an action on statute of limitations grounds is treated as a Rule 12(b)(6) motion to dismiss for failure to state a claim upon which relief can be granted. Gharty v. St. John's Queens Hospital, 869 F.2d 160, 162 (2d Cir. 1989).

B.     Accountant Defendants

Accountant Defendants move to dismiss under Fed. R. Civ. P. 12(b)(6) on the grounds that the Complaint fails to state a claim. They contend that (1) the Complaint fails to allege facts that satisfy the requirements for the civil RICO claims, (2) the Court should decline to exercise supplemental jurisdiction over the state law claims once the civil RICO claims are dismissed, and (3) the Complaint contains conclusory allegations or otherwise fails to satisfy the elements of the state law claims. Plaintiff contends that the pleading standard was met for the claims in question. Specifically, Plaintiff argues that Accountant Defendants' work as accountants for TIP and the Rudin Defendants is prima facie evidence of participation in the enterprise, malpractice, and breach of fiduciary duty. (Pl.'s Opp. Mem. at 19.)

1.     *Civil RICO (18 U.S.C. § 1962)*

To establish a private civil cause of action under RICO, a plaintiff must properly set forth: "(1) a violation of . . . [section] 1962; (2) an injury to business or property; and (3) that the injury was caused by the violation." De Falco v. Bernas, 244 F.3d 286, 305 (2d Cir. 2001); First

Nationwide Bank v. Gelt Funding Corp., 27 F.3d 763, 767 (2d Cir. 1994).  To state a claim under

section 1962(d) based on a conspiracy to violate section 1962(c), a plaintiff must allege a

substantive RICO violation.  See Discon, Inc. v. NYNEX Corp., 93 F.3d 1055, 1064 (2d Cir.

N.Y. 1996), vacated on other grounds, 525 U.S. 128 (1998); SKS Constructors, Inc. v,

Drinkwine, 458 F. Supp. 2d 68, 80 (E.D.N.Y. 2006); Medinol Ltd. v. Boston Sci. Corp., 346 F.

Supp. 2d 575, 613 (S.D.N.Y. 2004).  A substantive RICO violation is pled properly by a factual

showing of "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity" for

each individual defendant.  De Falcos, 244 F.3d at 306.  To meet the standard in Iqbal, these

allegations must establish the existence of the enterprise not by pleading conclusions of fact, but

by pleading factual allegations plausibly leading to these conclusions.  Here, as stated in

paragraph 43 of the Complaint: "In or about May 2010, however, Mr. Baker obtained access to

TIP's financial documents and records, and first discerned the existence of the Enterprise and its

scheme to divert and steal funds from TIP."  No other source of information relating to the

events of the prior thirteen years is cited in the Complaint.  Accordingly, it must be read in this

light.

     While RICO liability is not limited to those with primary responsibility for the

enterprise's affairs, in order to participate in the *conduct* of such affairs, the defendant must have

had some part in *directing* those affairs.  Reves v. Ernst & Young, 507 U.S. 170, 179 (1993)

(emphasis added).  This is met when the defendant participates in the "operation or management

of the enterprise itself."  Id. at 185-86 (finding no participation by accounting firm where

AICPA's professional standards were not in conflict with the firm's alleged activities).  The

7

provision of professional services in itself is insufficient to meet RICO's participation

requirement because these services do not require taking part in the direction of the enterprise's

affairs.  Azrielli v. Cohen Law Offices, 21 F.3d 512, 521-22 (2d Cir. 1994) (holding the

provision of legal representation during a fraudulent transaction insufficient to show operation or

management); Hayden v. Paul, Weiss, Rifkind, Wharton & Garrison, 955 F. Supp. 248, 254

(S.D.N.Y. 1997) (accounting firm's misrepresentations and omissions of material facts in

financial statements for the enterprise did not equate to participation in the operation or

management of the enterprise); Dep't of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.), 924 F.

Supp. 449 (S.D.N.Y. 1996) (accounting firm's concealment of an enterprise's fraudulent

activities did not amount to operation or management).  In addition, the plaintiff cannot simply

allege that certain entities provided services which were helpful to an enterprise; the complaint

must allege that those entities exerted "any control" over the enterprise.  City of New York v.

Smokes-Spirits.com, Inc., 541 F.3d 425, 449 (2d Cir. 2008); Hayden, 955 F. Supp. at 255 (noting

even the provision of essential services to an enterprise does not amount to control).

       The Complaint alleges that Accountant Defendants filed false information with the IRS

and paid Rudin excessive compensation.  (Compl. ¶ 38.)  It does not allege that any Accountant

Defendant was an officer or employee of TIP with authority to draw on its accounts.  Plaintiff

does allege a professional relationship between Accountant Defendants and the Rudin

Defendants.  (Id. ¶ 60.)  The Complaint also alleges, however, that Accountant Defendants acted

"at the direction of defendant Edward Rudin."  (Id. ¶ 57.)  As alleged, the professional services

provided by Accountant Defendants do not demonstrate any control over the enterprise.  Indeed,

at oral argument, Plaintiff's counsel disclosed that TIP's financial records were maintained on

the company's file server using QuickBooks, a line of accounting software for small business

owners, from which Rudin deleted some records by remote access. (Tr. at 27.)  These disclosures

of how Baker "first discerned the existence of the Enterprise and its scheme to divert and steal

funds from TIP," (Compl. ¶ 43,) make even less plausible the Complaint's conclusory

allegations about Accountant Defendant's "assistance and cooperation" and their participation in

the diversion of TIP funds to the Rudin Defendants, (Tr. at 30.)[1]

As Plaintiff has not and, based on the facts disclosed, cannot satisfy the participation

element required for both the civil RICO violation and the civil RICO conspiracy, Counts I and

II against Accountant Defendants are dismissed with prejudice.  See Vargas, 2011 U.S. Dist.

LEXIS 49310, at *8-10 (finding that plaintiff failed to plead with plausibility any predicate acts

of racketeering activity, and granting defendant's motion to dismiss and entering judgment for

defendant on the federal civil RICO claim); cf. Hayden, 955 F. Supp. at 253-54 (dismissing with

prejudice plaintiff's civil RICO claims for failure to allege or present facts "permitting a rational

inference" of defendant's participation in the enterprise).

2.    *Accounting Malpractice*

A claim for accounting malpractice must show (1) a departure from the accepted

standards of practice, and (2) that the departure was the proximate cause of the injury.  Housing

Works, Inc. v. Turner, 179 F. Supp. 2d 177, 216 (S.D.N.Y. 2001).  Plaintiff alleges gross

negligence by Accountant Defendants in failing to verify information in TIP's tax returns and

---

[1] The only improper payments alleged are funds received by various Rudin Defendants.

9

failing to provide copies of the tax returns to Baker. (Compl. ¶¶ 57-58.) The unverified information alleged relates to the identity of the corporation's officers and the extent of their ownership interest in the company. (Id. ¶¶ 45-55.) Plaintiff also alleges that this failure to act establishes causation because it was reasonably foreseeable that performance would have prevented the harm – namely the funneling of TIP funds to the Rudin Defendants. (Pl.'s Opp. Mem. at 29.)

As tax preparers, Accountant Defendants were subject to AICPA Professional Standards, which state in pertinent part: "In preparing or signing a return, a member may in good faith rely, without verification, on information furnished by the taxpayer or by third parties." American Institute of Certified Public Accountants, AICPA Professional Standards § TS 300.02 (2011). Reliance on information furnished by Rudin, who was the director and officer responsible for TIP's financial filings, (Compl. ¶ 35,) is not a departure from accepted practice. And, the failure by Accountant Defendants to furnish copies to Baker is also not a departure from accepted practice because Rudin was responsible for TIP's financial filings and he is alleged to have distributed Schedule K-1 statements to Baker annually. (Compl. ¶¶ 35, 39.) Furthermore, the provision of tax return preparation services containing the types of errors alleged in the Complaint is not proximate enough to constitute malpractice. As the Complaint fails to allege facts that plausibly show a departure from standard accounting practices, Count IV is dismissed with prejudice.

3.      *Breach of Fiduciary Duty*

A claim for breach of fiduciary duty requires: (1) a fiduciary relationship between the parties and (2) a breach of that fiduciary duty.  Kottler v. Deutsche Bank AG, 607 F. Supp. 2d 447, 465-66 (S.D.N.Y. 2009).  Absent special circumstances, the accountant-client relationship generally does not give rise to a fiduciary duty.  Vtech Holdings Ltd. v. PriceWaterhouseCoopers LLP, 348 F. Supp. 2d 255, 268 (S.D.N.Y. 2004) (noting an accountant's commission of active fraud would establish a fiduciary relationship, while a consulting relationship would not);[2] Lavin v. Kaufman, Greenhut, Lebowitz & Forman, 640 N.Y.S.2d 57, 58 (N.Y. App. Div. 1st Dept. 1996) (inferring a fiduciary relationship when accountants regularly advised clients beyond basic advice and the client unquestionably followed such advice).  Rather, a relationship is fiduciary in nature based on the services agreed to by the parties and evidenced by influence, control, or responsibility over the client.  Vtech Holdings Ltd., 348 F. Supp. 2d at 268.  Here, there are no factual allegations showing Accountant Defendants committed any fraud or gave TIP advice beyond basic advice.[3]

Plaintiff argues that a fiduciary relationship arises where the complaint alleges knowledge and concealment of illegal acts, and failure to withdraw in the face of a conflict of interest.  See Nate B. & Frances Spingold Found. v. Wallin, Simon, Black and Co., 585 N.Y.S.2d 416, 417 (N.Y. App. Div. 1st Dept. 1992).  Here, however, the allegations of knowledge and concealment of illegal acts are allegations regarding Accountant Defendants'

---

[2] Alleging a fiduciary relationship based on active fraud requires compliance with Fed. R. Civ. P. 9(b).  The Complaint fails to allege with particularity the elements for fraudulent concealment.  See infra Part II.B.4.
[3] Although the Complaint does allege that Accountant Defendants provided accounting services for TIP, it does not identify the nature of any services other than tax preparation.

provision of tax preparation services to TIP and the Rudin Defendants.  Further, the mere

preparation of tax returns containing the type of factual errors alleged in the Complaint, coupled

with bald conclusory allegations of knowledge and concealment do not meet the plausibility

standard in Iqbal.  As there are no factual allegations showing special circumstances giving rise

to a fiduciary duty, Count V is dismissed with prejudice.

       4.    *Fraudulent Concealment*

A claim for fraudulent concealment must show: "(1) failure to discharge a duty to

disclose, (2) an intention to defraud, or scienter, (3) reliance, and (4) damages."  TVT Records v.

Island DefJam Music Group, 412 F.3d 82, 90-91 (2d Cir. 2005).  Claims alleging fraudulent

omission must be made with particularity.  DirecTV Latin Am., LLC v. Park 610, LLC, 691 F.

Supp. 2d 405, 436 (S.D.N.Y. 2010); see Fed. R. Civ. P. 9(b).  Thus, the complaint must allege

with particularity "(1) what the omissions were; (2) the person responsible for the failure to

disclose; (3) the context of the omissions and the manner in which they misled the plaintiff; and

(4) what the defendant obtained through the fraud."  DirecTV Latin Am., 691 F. Supp. 2d at 436.

 The Complaint does not meet this standard.

Plaintiff argues that a duty to disclose arose because Accountant Defendants possessed

superior knowledge of essential facts.  See P.T. Bank Cent. Asia, N.Y. Branch v. ABN AMRO

Bank N.V., 754 N.Y.S.2d 245, 252 (N.Y. App. Div. 1st Dept. 2003).  However, the Complaint

makes clear that Accountant Defendants worked "at the direction of defendant Edward Rudin,"

who had an accounting background and was responsible for TIP's financial records.[4]  (Compl. ¶¶

---

[4] These records were maintained on TIP's file server using QuickBooks.  (Tr. at 27.)

4, 35.)  And the Complaint contains no factual allegations showing that Accountant Defendants provided accounting services to TIP other than tax preparation services, knew of the fraudulent transactions, and failed to disclose them to TIP.  The Complaint also lacks factual allegations regarding the facts not disclosed to TIP by Accountant Defendants, on what date, and why that omission is evidence of an intention to defraud or scienter.  Count VIII therefore fails to meet the particularity standard and is dismissed with prejudice as against Accountant Defendants.

      5.    *Accounting*

A party seeking an accounting must meet four requirements: "(1) relations of a mutual and confidential nature; (2) money or property entrusted to the defendant imposing upon him a burden of accounting; (3) that there is no adequate legal remedy; and (4) in some cases, a demand for an accounting and a refusal."  Pressman v. Estate of Steinvorth, 860 F. Supp. 171, 179 (S.D.N.Y. 1994) (quoting 300 Broadway Realty Corp. v. Kommit, 235 N.Y.S.2d 205, 206 (N.Y. Sup. Ct. 1962)).

Plaintiff contends that an accounting is necessary to gain a full financial picture of the fraudulent scheme which Accountant Defendants directly participated in.  (Pl.'s Opp. Mem. at 33.)  Accountant Defendants argue that the Complaint failed to properly allege a mutual and confidential relationship.  However, the Complaint alleges Plaintiff maintained a nearly thirteen-year relationship with Accountant Defendants for tax preparation services, (Compl. ¶ 4,) and therefore, it is plausible that a relationship of a mutual and confidential nature emerged during that time.  Nonetheless, the Complaint lacks allegations regarding any money or property entrusted to Accountant Defendants.  As alleged, TIP's financial records were only kept by

Rudin.  Plaintiff is now in possession of QuickBook records on TIP's file server, except for documents Rudin deleted in May 2010.  (Tr. at 26-27.)  Therefore, Count XII is dismissed without prejudice against Accountant Defendants, and upon a factual showing that Accountant Defendants have duplicate copies of TIP's financial books and records, Count XII may be reinstated.

B.     The Rudin Defendants

The Rudin Defendants moved to dismiss the Complaint, arguing that Plaintiff's claims are time-barred by the applicable statutes of limitations.  In the alternative, the Rudin Defendants request a hearing with limited discovery pursuant to Fed. R. Civ. P. 12(i), to settle the issue of whether Baker knew or should have known of the misconduct prior to May 2010.  As a matter of law, the Rudin Defendants argue Baker, as a director and majority shareholder of TIP from October 1997 to present, had an affirmative duty to know and understand the corporation's financial status by reviewing the financial documentation regularly during that period and instead did nothing.  Plaintiff contends dismissal is inappropriate because the determination of whether the claims are barred by their respective statutes of limitations requires consideration of the facts.  Plaintiff also argues that a Fed. R. Civ. P. 12(i) hearing is unavailable on statute of limitations grounds and the issue of Baker's affirmative duty is intertwined with the merits.

1. *Statutes of Limitations*

The statute of limitations period for civil RICO claims begins to run when the plaintiff discovers or should have discovered the injury that underlies the cause of action.  Bankers Trust

14

Co. v. Rhoades, 859 F.2d 1096, 1102 (2d Cir. 1988).  Under New York law, the running of the

statute of limitations for a claim based in fraud is subject to the plaintiff's actual or imputed

discovery of the facts constituting the fraud.  N.Y. C.P.L.R. § 213(8); see Malone v. Bayerische

Hypo-Und Vereins Bank, Nos. 08 Civ. 7277 (PGG) & 09 Civ. 3676 (PGG), 2010 U.S. Dist.

LEXIS 9529, at *12 (S.D.N.Y. Feb. 4, 2010) (citing Guilbert v. Gardner, 480 F.3d 140, 147 (2d

Cir. 2007)); see also Bouley v. Bouley, 797 N.Y.S.2d 221, 224 (N.Y. App. Div. 4th Dept. 2005)

(applying the discovery rule to equitable actions).  Thus, the discovery rule is applicable all state

law claims.

　　　　While it is true that Baker is subject to the fiduciary duties of a director as defined by

New Jersey law, In re Luxottica Group S.p.A. Sec. Litig., 293 F. Supp. 2d 224, 237 (E.D.N.Y.

2003), the degree of care Baker owed the corporation in relation to the constructive discovery

date of the alleged injuries, is not a pure question of law, but one requiring determination of the

facts and circumstances of Baker's activities.  N.J. Stat. § 14A:6-14(1)-(2) (directors of

corporations must "discharge their duties in good faith and with that degree of diligence, care

and skill which ordinarily prudent people would exercise under similar circumstances in like

positions" and may in good faith rely on written financial reports "as represented by the officer

of the corporation having charge of its books of account").  As the constructive date of discovery

cannot be determined at this stage in the proceedings, the statute of limitations periods cannot be

determined and the motion is denied without prejudice.

2.     *Preliminary Rule 12(i) Hearing*

The preliminary hearing under Fed. R. Civ. P. 12(i) requested by the Rudin Defendants authorizes the court to decide threshold issues raised by the defendants.  See Beltre v. Lititz Healthcare Staffing Solutions LLC, 757 F. Supp. 2d 373, 376 (S.D.N.Y. 2010).  However, the hearing should not concern the merits of the case, or issues closely interwoven with the merits so as to render it unlikely or impractical that the hearing would achieve a productive outcome in light of the stage of the proceedings.  Id.

The issue raised by the Rudin Defendants – when Baker should have discovered the alleged misconduct – is not a procedural matter, see United States v. Montreal Trust Co., 358 F.2d 239, 242 (2d Cir. 1966) (reviewing a district court's ruling after a preliminary hearing on personal jurisdiction), and is closely interwoven with the merits of the case.  Plaintiff alleges that prior to May 2010 it did not have access to documents where misconduct was evident.  Accepting Plaintiff's factual allegations as true, the Court denies the motion for a preliminary hearing, but orders that a deposition of Baker be conducted within 30 days to determine at what date he, as director, President, and majority shareholder of TIP knew or should have known of the actions complained of in the civil RICO causes of action.

### III.     CONCLUSION

Accountant Defendants' January 26, 2011 motion to dismiss is granted.  On the federal civil RICO claims and the state law claims, all claims other than Count XII are dismissed with prejudice.  Count XII is dismissed as to the Accountant Defendants without prejudice.

The Rudin Defendants' January 26, 2011 motion to dismiss on statute of limitations is

denied.  The Rudin Defendants' motion for preliminary hearing is denied.  The Court orders that

Baker be deposed within 30 days on the issue of the constructive discovery date.


IT IS SO ORDERED.


Dated: New York, New York

October 3, 2011



Robert P. Patterson, Jr.

U.S.D.J.



17

Copies of this Order faxed to:

*Counsel for Plaintiff:*

Jarrett Michael Behar
Sinnreich Kosakoff & Messina LLP
267 Carleton Avenue, Suite 301
Central Islip, NY 11722
(631) 650-1200
Fax: (631) 650-1207

*Counsel for Defendants:*

Nathaniel B. Smith
Law Office of Nathaniel B. Smith
111 Broadway - Suite 1305
New York, NY 10006
212 227 7062
Fax: 212 346 4665

Jennifer Wu
Landman Corsi Ballaine & Ford PC
120 Broadway, 27th Floor
New York, NY 10271
(212) 393-7932 x238-4800
Fax: (212) 238-4848

Sophia Ree
Landman Corsi Ballaine & Ford PC
120 Broadway, 27th Floor
New York, NY 10271
212-238-4800
Fax: 212-238-4848

John H. Eickemeyer
Vedder Price P.C. (NY)
1633 Broadway
47th Floor
New York, NY 10019
212 407 7760
Fax: 212 407 7799

18